IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANA SAMPLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIV. A. No. 21-0371-TFM-MU |
| DOLLAR GENERAL, | ) ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion to Compel Arbitration and Stay Proceedings filed by Defendant Dollar General (Doc. 27), Defendant's Memorandum of Law in Support of Motion to Compel Arbitration and Stay Proceedings (Doc. 28), and Plaintiff's Response to Motion to Dismiss with Supporting Memorandum of Law (Doc. 38). This motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen LR 72(a)(2)(S). Upon consideration of all relevant filings in this case and the applicable law, the undersigned recommends that Defendant's Motion to Compel Arbitration and Stay Proceedings be **GRANTED.**

**I.   Summary of Proceedings and Plaintiff's Allegations**

On August 24, 2021, Plaintiff Dana Sample filed a *pro se* Complaint in this Court claiming that Defendant Dollar General violated Title VII of the Civil Rights Act of 1964 by allegedly terminating her employment based on her race and color. (Doc. 1, PageID. 1-3). Plaintiff worked for Dollar General in Lillian, Alabama from April of 2020 until her termination in June of 2021. (*Id.*, PageID. 2). Plaintiff, who does not disclose her race or

color in the complaint, but according to Defendant, self-identified in her new hire documents as "Native American or Alaska Native," alleges that she was wrongly terminated by her manager, Dawn Orr, following a complaint of race discrimination by a black male customer to whom she had refused to sell beer. (Doc. 1, PageID. 1-3; Doc. 28, PageID. 68, n.2).

Plaintiff applied with Dollar General on April 7, 2020 and was extended a conditional offer of employment on April 10, 2020. (Doc. 28-1, PageID. 81). As part of the onboarding process that followed, Plaintiff reviewed and completed her new hire documents online through a password protected "Express Hiring" website. (*Id.*, PageID. 80-83). Job candidates at Dollar General access and complete their new hire documents through a secure web link sent by email to the address provided on their job application. (*Id.*, PageID. 81). Once the candidate clicks that link, the candidate gets taken to an online system known as "Express Hiring." (*Id.*). Candidates logging in to the Express Hiring system for the first time are instructed to enter their social security number (with no dashes or spaces) and a temporary initial password comprised of the month and day of their birth in "MMDD" format. (*Id.*). The candidate must then immediately change their password before they can proceed any further. (*Id.*). After changing their password, candidates are prompted by the system to review and verify the position and pay rate for the job offered and to complete a "Personal Information" form that verifies their social security number, name, residential address, phone number, and full date of birth. (*Id.*). Candidates are also notified that their electronic signature will be used to sign the various documents presented in the hiring process, and that "your initials, in conjunction with your personal password that you used to gain

access to the system, will constitute your electronic signature ("e-signature") and will identify that record or transaction as yours." (*Id.*). Before being allowed to proceed further, the candidate is asked to enter their initials to create their electronic signature and notified that by doing so they are agreeing to the conditions quoted above. (*Id.*). The system also notifies candidates that they are not to disclose their password to others and states explicitly that they cannot deny the legal effect or enforceability of their signature because it is electronic. (*Id.*).

On the morning of April 10, 2020, Plaintiff was emailed a link to her "New Hire Packet" on the Express Hiring System at the email address she provided on her job application. (*Id.*, PageID. 82). Her Express Hiring records reflect that she went to the Express Hiring website later that same day using the link provided and that she reviewed and completed her New Hire packet starting at 12:47 p.m. and ending at 1:05 p.m. (*Id.*). Among the first documents she was presented was a Job Verification form, which asked her to verify the job position and pay rate she had been offered and a Personal Information form, which solicited her name, full contact info, social security number, and date of birth. (*Id.* at PageID. 82, 84-85). She next created and saved her electronic signature at 12:49 p.m., agreeing in the "E-Signature" form that the electronic signature "DS" would have the same legal effect as her handwritten signature. (*Id.*, PageId. 82, 86). For the rest of her online session, Plaintiff proceeded to review various documents, respond to information requests, and acknowledge company policies.

At 12:58 p.m., Plaintiff reviewed and executed the Arbitration Agreement by which she and Dollar General mutually agreed to arbitrate claims against the other. (*Id.*, PageId 82, 90-91). Plaintiff had two options presented before execution of the

Arbitration Agreement. She could either (1) accept the agreement at the time or (2) wait up to 30 days after she began employment to review and consider it further and, if she wished, opt out of the Agreement. (*Id.*, PageId. 83, 91). She elected the first of these options and, in so doing, acknowledged the following: "I agree to the terms of the Agreement. I understand and acknowledge that by checking this box, both Dollar General and I will be bound by the terms of this Agreement." (*Id.*).

The Arbitration Agreement states, in relevant part, as follows:

> You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General, its parent and subsidiary corporations, . . . arising out of your employment with Dollar General or termination of employment with Dollar General ('Covered Claim' or 'Covered Claims') will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you related to your employment will [also] be addressed in the manner described in this Agreement**.**
>
> . . .
>
> I agree to the terms of the Agreement. I understand and acknowledge that . . . both Dollar General and I will be bound by the terms of this Agreement.

(*Id.*, PageID. 90-91). The Arbitration Agreement further provides that the procedures listed within it are "the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment." (*Id.*, PageID. 90). The Arbitration Agreement also expressly states that the Covered Claims subject to arbitration include claims arising out of the employee's employment, such as:

4

> claims alleging violations of wage and hour laws, state and federal laws prohibiting discrimination, harassment, and retaliation, claims for defamation or violation of confidentiality obligations, claims for wrongful termination, tort claims, and claims alleging violation of any other state or federal laws....

(*Id.*).

## II. **Standard of Review**

In *Bazemore v. Jefferson Capital Sys., LLC*, 827 F. 3d 1325, 1333 (11th Cir. 2016), the Eleventh Circuit set forth the following standard of review for courts faced with the applicability or enforceability of an arbitration agreement:

> [A] District Court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement. A dispute is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative. Conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment.

(Internal citations and quotation marks omitted). Therefore, because the standard of review for a motion to compel arbitration is the same as that applied to a motion for summary judgment, an order compelling arbitration is in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate. *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (per curiam). As with a summary judgment motion, the court views the evidence in the light most favorable to Plaintiff. *Moore ex rel. Moore v. Reese,* 637 F.3d 1220,1232 (11th Cir. 2011).

## III. **Discussion and Analysis**

Dollar General avers that it and Plaintiff are parties to a mutually binding arbitration agreement that encompasses the employment discrimination claims that Plaintiff now seeks to litigate in this Court, and therefore, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., and controlling case law, the Court should compel arbitration and stay this action. Dollar General argues that the grounds mandating arbitration under applicable law are all present, including the following:

- Plaintiff and Dollar General entered into a valid contract under Alabama law when she executed an arbitration agreement as part of Dollar General's online hiring process.

- Employment discrimination claims are among those claims that the parties agreed would be subject to mutually binding arbitration.

- Dollar General is a nationwide retailer that employs individuals in numerous states, including Alabama. The arbitration agreement at issue accordingly evidences a transaction affecting interstate commerce.

- Dollar General's arbitration agreement has been repeatedly recognized as enforceable under the Federal Arbitration Act and Alabama law. The substance and method of its execution by Plaintiff - electronically as part of an online hiring process - is also substantially the same as the arbitration agreement enforced by this Court in *Heads v. Paradigm Inv. Grp., LLC*, Civ. A. No. 1:20-cv-284-TFM-M, 2020 WL 4573821 (S.D. Ala. Aug 7, 2020).

In her response in opposition to Defendant's motion to compel arbitration, Plaintiff does not argue or put forth any evidence in support of an argument that she did

6

not enter into a valid arbitration agreement with Dollar General. (Doc. 38). Rather, she argues that the arbitration agreement should be revoked because of Dollar General's actions surrounding her termination. (*Id.,* PageID. 183-84).

The propriety and enforceability of arbitration agreements is well settled. The Supreme Court has long held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983), and questions about arbitrability "must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see also CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 668 (2012) (noting that Congress enacted the FAA "as a response to judicial hostility to arbitration"). Alabama law similarly recognizes and upholds the federal policy favoring arbitration. *See*, *e.g.*, *Auto Owners Ins., Inc. v. Blackmon Ins. Agency, Inc.*, 99 So. 3d 1193, 1196 (Ala. 2012) ("[A] motion to compel arbitration should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *Ocwen Loan Servicing, LLC v. Washington*, 939 So. 2d 6, 14 (Ala. 2006) (noting that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration).

The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore,* 827 f. 3d at 1329 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995)). "[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1368 (11th Cir. 2005) (citing *Perry v. Thomas*, 482

7

U.S. 483, 492 n.9 (1987)). In *Heads v. Paradigm Investment Group, LLC*, this Court noted that "under Alabama law, '[a]rbitration provisions are to be treated like any other contractual provision.'" Civ. A. No. 1:20-cv-284-TFM-M, 2020 WL 4573821, at *4 (S.D. Ala. Aug. 7, 2020). Under Alabama law, the party seeking to enforce a contract must prove, by a preponderance of the evidence, "an offer, an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009). In addition, to be enforceable under the Federal Arbitration Act, the underlying contract must evidence a transaction affecting interstate commerce. 9 U.S.C. § 2.

Dollar General's form of arbitration agreement has been recognized as valid and enforceable under Alabama law and the FAA. *See, e.g., Falkner v. Dolgencorp, LLC*, Case No. 2:19-cv-598-GMB, 2020 WL 470292 (N.D. Ala. Jan. 29, 2020) (compelling arbitration of tort claims asserted by former employee); *Smith v. Dolgencorp, LLC*, 2017 WL 818570 (N.D. Ala. Mar. 2, 2017) (compelling arbitration of covered FLSA wage and hour claims); *Yearwood v. Dolgencorp, LLC*, 2015 WL 5935167 (N.D. Ala. Oct. 13, 2015) (same). The decision to compel arbitration under the FAA depends on consideration of three factors, all of which are met here: (1) whether the parties formed a valid and enforceable agreement to arbitrate; (2) whether the agreement to arbitrate encompasses the underlying dispute; and (3) whether the underlying contract evidences a transaction involving interstate commerce. *See* 9 U.S.C. §§ 2-3; *King v. Cintas Corp.*, 920 F. Supp. 2d 1263, 1267 (N.D. Ala. 2013). Here, all requisite elements of a contract under Alabama law are met, including offer, acceptance, consideration, and mutual assent to the terms. *Baptist Health Sys. v. Mack*, 860 So. 2d 1265, 1273 (Ala. 2003)

(reversing trial court's denial of motion to compel arbitration, finding valid contract under Alabama law).

Plaintiff accepted the terms of the Arbitration Agreement that Dollar General offered to her when she completed her New Hire packet through the Express Hiring System. Her decision to do so was voluntary, as is evidenced by the fact that the agreement offered to her included an option to take thirty additional days to consider it before either signing it or electing to opt out. She instead chose the other option presented, which was to accept the Agreement and immediately obligate both Dollar General and herself to arbitrate claims against the other. *Accord Junious v. Midtowne Fin.,* 2021 WL 5216882, at *5 (N.D. Ala. Aug. 31, 2021) (citing *Falkner v. Dolgencorp, LLC*, with approval for proposition that "the defendant demonstrated the absence of any genuine dispute of material *fact* vis-à-vis the formation of a valid arbitration agreement by producing a copy of an arbitration agreement bearing the plaintiff's initials); *Jefferson v. Baptist Health Sys., Inc.*, 2014 WL 6455144, at *2 (N.D. Ala. Nov. 13, 2014) (compelling arbitration of agreement signed electronically).

The agreement was also supported by consideration. For example, Plaintiff is not the only one bound by the Arbitration Agreement. Until she agreed to the terms offered, Dollar General had the same right as she did to pursue claims against her in court and before a jury. By accepting the agreement, however, Plaintiff received a benefit she would not otherwise have -- a contractual right to require Dollar General to have claims against her heard in arbitration rather than in court. She and Dollar General also received additional consideration from the other by having the decision on any such claim be final and binding rather than subject to appeal, and to have all covered claims

9

heard without a jury. By its explicit terms, Plaintiff and Dollar General mutually assented to the Arbitration Agreement. Dollar General indicated its assent to the terms of the agreement by offering it to Plaintiff during the hiring process, and Plaintiff similarly assented by accepting it when it was offered. The parties' respective actions reflect mutual assent to the terms of the Agreement, and the resulting formation of a valid contract under Alabama law.

The Title VII race and color discrimination claims attempted in this action are also expressly encompassed by the "Covered Claims" defined within the parties' agreement:

> The procedures in this Agreement will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General, whether brought by you or Dollar General. *This includes, but is not limited to, claims alleging violations of* wage and hour laws, *state and federal laws prohibiting discrimination*, harassment, and retaliation, claims for defamation or violation of confidentiality obligations, *claims for wrongful termination*, tort claims, and claims alleging violation of any other state or federal laws, except claims that are prohibited by law from being decided in arbitration, and those claims specifically excluded in the paragraph below [e.g. claims for unemployment, workers compensation benefits, and ERISA benefits.]

(Doc. 28-1, PageID. 90 (emphasis added)). The Agreement also contains an explicit and mutual waiver of a jury trial: "You also waive your right to a jury trial … and Dollar General waives its right to a jury trial," while preserving the right to file administrative charges with governmental agencies such as the EEOC and state fair employment practices agencies. (*Id.* at 91). These terms make clear that arbitration is to be the sole and exclusive mechanism for resolving discrimination claims that would otherwise be brought in court.

The Supreme Court has examined the FAA's "involving commerce" language and determined that this language signaled "congressional intent to exercise its

Commerce Clause powers to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995). According to the Court, the interstate commerce requirement is satisfied if the "transaction" remotely "involved" interstate commerce even if the contracting parties did not contemplate an interstate commerce connection. *Id.* at 843. As a national retailer with employees in numerous states, including Alabama, Dollar General's arbitration agreement meets this requirement. *See Yearwood*, 2015 WL 5935167 (finding FAA applicable and ordering arbitration); *see also Woods v. Dolgencorp,* C/A No. 7:20-cv-04399-DCC, 2021 WL 5989965, at * (D.S.C. Dec. 17, 2021) ("the Court finds that the [Dollar General Arbitration] Agreement affects interstate commerce").

Based on the foregoing, the Court finds that Plaintiff entered into a valid arbitration agreement with Dollar General that applies to the claims she has asserted in her complaint and that meets the FAA's interstate commerce requirement. As noted above, Plaintiff has not challenged the making of the arbitration agreement here, nor its validity. Rather, Plaintiff seems to argue that the arbitration agreement should be revoked because of Dollar General's actions surrounding her termination. Specifically, Plaintiff asserts that Dollar General employees, including management and legal representatives, ignored "unconscionable acts" over a lengthy period of time and terminated her for "upholding the law." (Doc. 38 at p. 1). However, the issue of the legality and propriety of Plaintiff's termination is at the very crux of her lawsuit and clearly covered by the arbitration agreement. In addition, Plaintiff also seems to argue that the arbitration agreement should be revoked due to Dollar General's failure to request arbitration during the course of her employment and when she presented her

claims to the EEOC. (*Id.* at pp. 2-3). The arbitration agreement expressly provides that Plaintiff retains the right to file charges with the EEOC; therefore, Dollar General could not have requested arbitration at that stage. (Doc. 28-1, PageID. 91). The Court finds no factual or legal support for Plaintiff's argument that the arbitration agreement should be revoked.

## IV. Conclusion

"When a party who has agreed to arbitrate a dispute instead brings a lawsuit, the Federal Arbitration Act (FAA) entitles the defendant to file an application to stay the litigation." *Morgan v. Sundance, Inc.*, __ U.S. __, 142 S. Ct. 1708, 1710 (2022). For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that Defendant Dollar General's Motion to Compel Arbitration and Stay Proceedings (Doc. 27) be **GRANTED** and that this matter be **STAYED** pending the outcome of arbitration.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to

object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **5th** day of **January, 2023**.

s/P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE